IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 5762 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CHARLES D. LEMLE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Charles Lemle filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1]. Lemle claims that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he was entitled to have a jury determine the facts underlying certain sentencing enhancements that he received. Furthermore, he contends that his trial counsel was ineffective during plea negotiations and sentencing by failing to explain or protect his rights under *Apprendi*. Because Lemle was not entitled to have a jury determine the facts underlying his sentencing enhancements, his motion is denied.

## Factual and Procedural Background

In August 2012, Lemle, along with three other defendants, was indicted on charges arising out of a firearm-trafficking conspiracy. *See* Superseding Indictment, No. 12 CR 354, ECF No. 17. Subsequently, while on pretrial release, he committed another crime involving a firearm. *See* Plea Agreement ("PA") ¶ 6, No. 14 CR 465, ECF No. 28. Specifically, in the early morning hours of January 1, 2014, he left his

residence (in violation of his pretrial-release conditions), took a 9-millimeter pistol to a nearby alley, and shot it into the air several times. *Id.* A police officer came to investigate, saw Lemle holding a gun in his direction, and shot him. *See* Tr. of Hr'g of 11/23/15 at 10:13-21, No. 14 CR 465, ECF No. 51.

Lemle was then indicted in the case underlying the present motion. Count One of the indictment charged Lemle with unlawful possession of a weapon by a felon, *see* 18 U.S.C. § 922(g)(1), and alleged that he had committed this crime while on pretrial release, *see* 18 U.S.C. § 3147. The indictment also included a forfeiture count. *See* Indictment, No. 14 CR 465, ECF No. 1.

Lemle pleaded guilty to the indictment as charged. *See* PA ¶ 5. In the plea agreement, Lemle acknowledged that on January 1, 2014, he had possessed a 9-millimeter pistol while on pretrial release and after having previously been convicted of a felony. *Id.* ¶ 6. Furthermore, he admitted that he shot the pistol into the air, and that when police officers came to investigate, he "pointed the firearm at the officers in a manner that caused the police officers to fear [for] their safety." *Id.*

Prior to the sentencing hearing, a probation officer made recommendations with respect to sentencing. *See* Presentence Investigation Report ("PSR"), No. 14 CR 465, ECF No. 30. The PSR stated that the base offense level was 20, and recommended two specific sentencing guidelines enhancements at issue here.

First, the PSR explained that Lemle had "used and possessed the firearm in connection with other felony offenses, namely the aggravated assault of the peace officers and the reckless discharge of the firearm," warranting a four-level increase

2

under USSG § 2K2.1(b)(6)(B). *Id.* ¶ 16. Second, the PSR explained that, because Lemle "pointed a loaded firearm at the responding officers, placing them in fear for their life," he had created a substantial risk of serious bodily injury, knowing or having reasonable cause to believe that the victim was a law-enforcement officer, and had assaulted the officer during the course of the offense. *Id.* ¶ 17. This conduct warranted a six-level increase under USSG § 3A1.2(c)(1). Accordingly, the PSR calculated a total offense level of 30, which, combined with Lemle's criminal history category of V, led to a guidelines range of 151 to 188 months' imprisonment. *Id.* ¶ 111.

Lemle, through counsel, filed written objections to the PSR, arguing that the enhancements under §§ 2K2.1 and 3A1.2 should not apply. Def.'s Sentencing Mem. at 3–5, No. 14 CR 465, ECF No. 34. The Court heard argument as to these objections at the sentencing hearing. As to the enhancement under § 2K2.1, counsel argued that it essentially amounted to double-counting Lemle's offense of unlawful possession of a weapon, because the additional offenses of discharging the weapon and assaulting a police officer occurred at the same time. *See* Tr. of Hr'g of 11/23/15 at 34:9–35:5. As for the enhancement under § 3A1.2(c)(1), counsel argued that there was insufficient evidence to conclude that Lemle had actually pointed a gun at the responding officers. *See id.* at 4:9–5:18. Counsel pointed out that the conclusion that Lemle had done so was based in part on a statement Lemle made after his arrest, in which he said something to the effect that he "could see why police officers may have *thought* he had a gun in his hand." *Id.* at 5:10-14 (emphasis added).

Officer Nicholas Morales, the Chicago Police officer who shot Lemle, testified at the sentencing hearing. He explained that, in the early hours of January 1, 2014, he was on duty and heard shots fired. *Id.* at 8:9–9:13. He and several officers spread out to search for the culprit, and around the corner of a building, he saw the "silhouette, shoulder and elbow, of the defendant creeping out from the side of the building." *Id.* at 9:13–10:15. Officer Morales said he told Lemle to stop and show his hands. *Id.* at 10:15-16. But, "as [Lemle] turned, his gun was at his side in his right hand . . . . as he turned he started to raise the gun." *Id.* at 10:17-19. Officer Morales stated that he then feared for his life and shot twice at Lemle. *Id.* at 10:20-21.

On cross-examination, Officer Morales admitted that when he encountered Lemle, Lemle was running away from him. *Id.* at 15:3-5. He stated that, when he told Lemle to stop, Lemle turned around and faced him. *Id.* at 17:6-14. But then, after Officer Morales shot him, he "spun around and fell face first on his stomach," facing the other direction. *Id.* at 17:15-17. Lemle's attorney questioned this testimony, contending that Officer Morales had actually approached and shot Lemle from behind, meaning that Officer Morales had not reasonably feared that Lemle was going to harm him. *See id.* at 23:2-9, 24:5–25:22. Thus, counsel argued, an enhancement under § 3A1.2 was not warranted. *Id.*

The Court ruled on both objections prior to sentencing, first concluding that it was appropriate to apply an enhancement under § 2K2.1, given that Lemle had been charged in state court with reckless discharge of a firearm and had admitted to that conduct. *Id.* at 35:18-36:5. The Court further held that, after weighing the testimony

4

of Officer Morales and considering the arguments of counsel, the Government had demonstrated by a preponderance of the evidence that Lemle had pointed his gun at Officer Morales, thereby warranting the application of § 3A1.2. *Id.* at 30:7-12. The Court specifically concluded that, while Lemle's post-arrest statement alone was not enough to reach this threshold, it was supported by Officer Morales's testimony, which the Court found credible. *Id.* at 30:13-21. Furthermore, the Court rejected any argument as to Lemle's positioning when he was shot, given Officer Morales's testimony that he saw Lemle turn and raise his gun toward him. *Id.* at 30:22–4.

The Court then proceeded to impose a total sentence of 151 months of incarceration, consisting of 120 months for the § 922(g)(1) charge and an additional 31 months pursuant to § 3147. *Id.* at 59:15-19. At that point, Lemle had been sentenced in his weapons-trafficking case and had received a term of imprisonment of 120 months. *Id.* at 57:3-6. Accordingly, the Court held that Lemle's 151-month sentence would be served partially concurrently with the sentence in Case No. 12 CR 354, "so that defendant serves an additional 96 months of custody after he has served his period of custody for the sentence in 12 CR 354." *Id.* at 59:20-23.

On appeal, the Seventh Circuit affirmed the imposition of the four-level enhancement under § 2K2.1. *See United States v. Lemle*, 668 F. App'x 171, 173 (7th Cir. 2016). The Court of Appeals held that, contrary to counsel's argument, "[b]y recklessly discharging the gun into the air, Lemle's conduct went beyond that necessary to charge simple possession of a firearm by a felon, and satisfied the elements of a separate felony offense." *Id.* at 172 (citations omitted).

5

Lemle timely filed his § 2255 motion on August 7, 2017. *See* § 2255 Mot., ECF No. 1.

**Legal Standard**

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013).

**Analysis**

Lemle argues that he was entitled to have a jury determine the facts underlying the enhancements under §§ 2K2.1 and 3A1.2, pursuant to *Apprendi*, 530 U.S. 466. He contends that the Court's determination of the facts violated his due-process rights and his rights under the Sixth Amendment, and that his counsel provided ineffective assistance by failing to advise him of his *Apprendi* rights during the plea negotiations or sentencing. The Government argues that Lemle did not have a right to a jury determination of the facts underlying his sentencing enhancements.

The issue of jury determination as it pertains to sentencing has an extensive backstory. Under the Sentencing Reform Act of 1984, the federal sentencing guidelines were mandatory—in other words, if the facts showed that a particular guideline was relevant to a case, the sentencing court had to apply it. *See United States v. Booker*, 543 U.S. 220, 233 (2005). But judges, not juries, found the facts underlying the guidelines calculation. *See id.* at 235. Accordingly, the federal sentencing guidelines often required a judge to find facts that increased a defendant's sentence beyond the maximum supported by a jury verdict or plea. *See id.* at 236.

In 2000, the Supreme Court decided *Apprendi*, holding that the Sixth Amendment right to jury determination applies to any fact—other than the existence of a prior conviction—that increases the penalty for a crime beyond the statutory maximum. 530 U.S. at 490. Accordingly, although *Apprendi* addressed a state sentencing scheme, it appeared to have significant consequences for the federal sentencing guidelines. *See also Blakely v. Washington*, 542 U.S. 296, 305 (2004) (applying *Apprendi* to strike down another state sentencing structure).

*Booker*, which the Supreme Court decided in 2005, addressed those consequences and struck down key parts of the Sentencing Reform Act that rendered the sentencing guidelines mandatory. *See Booker*, 543 U.S. at 226–27. Following that decision, courts have followed an "advisory" guidelines scheme. *See id.* at 245; *United States v. Wilson*, 502 F.3d 718, 721 (7th Cir. 2007); *United States v. Macedo*, 406 F.3d 778, 788 (7th Cir. 2005). Under that structure, a district judge, rather than a jury, finds the facts pertaining to sentencing by a preponderance of the evidence.

7

*See United States v. White*, 472 F.3d 458, 464 (7th Cir. 2006). The judge then considers the advisory sentencing guidelines range and the factors listed in 18 U.S.C. § 3553(a), and imposes a sentence that is, in the court's judgment, "sufficient, but not greater than necessary" to effectuate the purposes of punishment. 18 U.S.C. § 3553(a); *see White*, 472 F.3d at 463. Furthermore, if the advisory guidelines range is calculated to exceed the statutory maximum, the guidelines range is capped at the statutory maximum. *See* USSG § 5G1.1(a), (c)(2).

Because of these developments, *Apprendi* does not apply to a district judge's consideration of the facts underlying an advisory sentencing guidelines enhancement. *See, e.g.*, *United States v. Stokes*, 726 F.3d 880, 898 (7th Cir. 2013); *Wilson*, 502 F.3d at 721; *White*, 472 F.3d at 464 & n.1 (collecting cases). In other words, after *Booker*, a sentencing judge may find facts supporting an enhancement without running afoul of the Sixth Amendment, so long as the resulting guidelines calculation does not exceed the statutory maximum.

Accordingly, there was no *Apprendi* error with respect to the Court's imposition of enhancements under §§ 2K2.1 or 3A1.2. The sentence Lemle received—151 months—was at the low end of his guidelines range of 151 to 188 months. Pursuant to USSG § 5G1.2, the Court explained how the 151 months was allocated: 120 months for the § 922(g)(1) charge, and 31 additional months pursuant to 18 U.S.C. § 3147. The statutory maximum sentence for a violation of § 922(g)(1) is 120 months, while § 3147 requires the imposition of a consecutive sentence—up to another 120 months—if the offense was committed while on pretrial release. Accordingly, Lemle

8

was subject to two separate statutory maximum sentences of 120 months, for a total maximum of 240 months. *See United States v. Parolin*, 239 F.3d 922, 930 (7th Cir. 2001) (explaining that a sentence under § 3147 is properly calculated as being in addition to the sentence on the underlying crime).

Lemle's sentence of 151 months thus fell far below his total statutory maximum sentence, and the Court did not exceed the statutory maximum for either the § 922(g)(1) charge or the § 3147 charge. Accordingly, the sentencing enhancements imposed under §§ 2K2.1 and 3A1.2 did not necessitate the finding of facts by a jury. Rather, the Court's determination of the facts by a preponderance of the evidence was appropriate.[1] *See Stokes*, 726 F.3d at 898.

Accordingly, Lemle's § 2255 motion cannot succeed as to his substantive claims, whether based on the Sixth Amendment or on his due-process rights. What is more, Lemle cannot succeed on his claim of ineffective assistance of counsel. To prevail on such a claim, Lemle would have to show that counsel's performance was constitutionally deficient, *i.e.*, that his representation "fell below an objective standard of reasonableness" as measured against "prevailing professional norms," and that counsel's deficient performance prejudiced him in some way. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). But Lemle argues only that counsel should have informed him of his *Apprendi* rights or made arguments about them to

---

[1] Lemle does not argue that the enhancement under § 3147 violated his rights under *Apprendi*, nor could he. Because he admitted to the facts underlying the § 3147 charge and agreed to plead guilty to it, jury determination was not necessary. *See Blakely*, 542 U.S. at 303 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (emphasis in original)).

the Court.  Yet, as already explained, Lemle did not have any such rights with respect to the sentencing enhancements.  Counsel's performance could not have been deficient, nor could it have prejudiced Lemle, based on his failure to offer inaccurate advice.  *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel.").

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, Lemle's § 2255 motion is denied.  The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Lemle has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)).  Civil case terminated.

IT IS SO ORDERED.                    ENTERED:  4/30/19

_____
**John Z. Lee**
**United States District Judge**